H & J Floor Covering, Inc., Respondent, v Board of Education of the City of New York, Appellant.

Second Department, February 20, 1979

APPEARANCES OF COUNSEL

*Allen G. Schwartz, Corporation Counsel (Stephen J. Mc-Grath* and *L. Kevin Sheridan* of counsel), for appellant.

*Bert K. Leffert* for respondent.

## OPINION OF THE COURT

Shapiro, J.

In this action to recover the balance due on certain contracts, in which plaintiff, after a jury trial, has recovered a judgment in the principal amount of $36,676.38, the defendant contends that recovery should have been denied and plaintiff's complaint should have been dismissed because it did not allege or prove "that a written verified claim * * * was presented * * * within three months after the accrual of * * * [the] claim", as required by subdivision 1 of section 3813 of the Education Law. Plaintiff admits such noncompliance, but argues that it has complied with section 2562 of the Education Law which, it contends, is alone here applicable.[1] We agree with defendant.

### PRELIMINARY STATEMENT

Subdivision 1 of section 3813 of the Education Law (which is entitled "Presentation of claims against the governing body of any school district or certain state supported schools") provides: "No action or special proceeding, for any cause whatever * * * shall be prosecuted or maintained against any school district, *board of education* * * * or any officer of a school district [or] *board of education* * * * unless it shall appear by and as an allegation in the complaint or necessary moving papers that a *written verified claim* upon which such action or special proceeding is founded was presented to the governing body of said district * * * *within three months after the accrual of such claim,* and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment" (emphasis supplied).

Subdivision 3 of section 3813 states: *"The provisions of this*

---

1. In *Monks v Manch* (33 AD2d 989), an action against the Board of Education of the City of Buffalo, the court said: "While this section [2562 of the Education Law] requires a demand and 30-day waiting period, it is silent as to the form or contents of the demand. Since the statute does not specifically require that it be presented in writing, an oral demand would suffice." In our case plaintiff, while admitting that, as to most of its claims, it did not present the defendant with any written demand, contends that it may nevertheless recover on the basis of that decision. In view of our conclusion that section 3813 of the Education Law applies to this case, we need not pass on the validity of that contention. We note, however, that the *Monks* case did not discuss the applicability of section 3813, nor did the briefs in that case raise that issue (other than a volunteered statement by the board of education that section 3813 and the cases thereunder did not apply).

*section shall not supersede, alter or affect the provisions of section twenty-five hundred twelve of this chapter"* (emphasis supplied) and it is that sentence upon which plaintiff bases its claim that its alleged compliance with section 2512 is sufficient.

Section 2562 of the Education Law (formerly numbered 2512, and which concededly is the statute referred to in § 3813, subd 3 [see n 9]), is entitled "Presentation of claims against a board of education of a city having a population of four hundred thousand or more to be pleaded." It provides (1) that "[n]o action or special proceeding, for any cause whatever" may be maintained against the board of education of such city (i.e., New York City and Buffalo) unless it appears "by and as an allegation in the complaint or necessary moving papers that at least thirty days have elapsed since the demand, claim or claims upon which such action or special proceeding is founded were presented to the said board of education for adjustment", and (2) that the claimant, upon request, must testify under oath. It does not contain the requirements of section 3813 that the claim be verified or that it be presented at any particular time after the claim arose.

We are therefore required to determine whether the institution of contract actions against the Board of Education of the City of New York (or Buffalo) must be preceded by the presentation of "a written verified claim * * * within three months after the accrual of such claim" as required by section 3813, or whether compliance only with the requirements of section 2562 is sufficient. This necessitates a detailed analysis of the background of both statutes which, unfortunately, is not contained in either brief.

## I. SECTION 2562 OF THE EDUCATION LAW AND ITS FOREBEARS

### A: The 1897 New York City Charter

The genesis of section 2562 of the Education Law was sections 149 and 261 of the original charter of the expanded City of New York, which for the first time included the present five boroughs. That charter was promulgated by chapter 378 of the Laws of 1897.

Section 149 was contained in title 1 of the chapter entitled "Department of Finance". It dealt with the duties of the Comptroller and included the following provision: "The comptroller may require any person presenting for settlement an

account or claim for any cause whatever, against the corporation, to be sworn before him touching such account or claim, and when so sworn, to answer orally as to any facts relative to the justness of such account or claim. Wilful false swearing before him is perjury, and punishable as such."

Section 261 was contained in the chapter dealing with the Law Department. It stated:

"Presentation of Claims to be Pleaded.

"§ 261. No action or special proceeding, for any cause whatever, shall be prosecuted or maintained against The City of New York, unless it shall appear by and as an allegation in the complaint or necessary moving papers that at least thirty days have elapsed since the demand, claim or claims upon which such action or special proceeding is founded were presented to the comptroller of said city for adjustment, and that he has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment."

The combined effect of these charter provisions was that no action or proceeding could be maintained against the City of New York unless (1) the claim underlying the action or proceeding had been presented to the Comptroller, (2) there was a lapse of 30 days without adjustment, and (3) the claimant, if so requested by the Comptroller, had testified at a sworn hearing. These provisions related to actions or proceedings against New York City itself; the charter contained no separate provisions with regard to actions against any particular municipal agency or department. There was no provision therein dealing with actions against the Board of Education of the City of New York.[2]

### B: The 1936 Board of Education Statute

Section 868-b of the former Education Law, entitled "Presentation of claims against a board of education of a city

---

2. The later New York City Charter, effective January 1, 1938, and the accompanying Administrative Code, repeated the essentials of sections 149 and 261 of the 1897 Charter in that they provided that the comptroller would "adjust all claims * * * against the city in such manner as shall be prescribed by law and for that purpose may administer oaths" (New York City Charter, § 93, subd g), and, specifically, that he could require a claimant to be sworn before him, and that "[w]ilful false swearing * * * is perjury and punishable as such" (Administrative Code of City of New York, § 93d-1.0). Further, section 394a-1.0 of the Administrative Code provided that every action against the city must be preceded by a lapse of 30 days after presentation of the claim. But, here again, these provisions did not relate to actions against the board of education.

having a population of one million or more to be pleaded", was enacted by chapter 769 of the Laws of 1936, effective September 1, 1936. It stated:

*"Presentation of claims against a board of education of a city having a population of one million or more to be pleaded.*

"1. No action or special proceeding, for any cause whatever, shall be prosecuted or maintained against a board of education of a city having a population of one million or more, *unless it shall appear by and as an allegation in the complaint or necessary moving papers that at least thirty days have elapsed since the demand, claim or claims upon which such action or special proceeding is founded were presented to the said board of education for adjustment,* and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days, after such presentment.

"2. The said board of education may require any person presenting for settlement an account or claim for any cause whatever against it to be sworn before it or a committee thereof, or before any person designated by said board, touching such account or claim, and when so sworn, to answer orally as to any facts relative to the justness of such account or claim. A member of the board, or any other person designated as hereinbefore stated, shall have the power to administer an oath to any person who shall give testimony to the justness of such account or claim. Wilful false swearing before the said board of education, a committee thereof, or before any person designated as hereinbefore stated, is perjury and punishable as such" (emphasis supplied).

It should be noted that the statute's two paragraphs track sections 149 and 261 of the 1897 New York City Charter and, in essence, merely substitute the board of education as the entity against whom the "action or special proceeding, for any cause whatever" could be maintained.

The legislative bill jacket of section 868-b (L 1936, ch 769) includes a supporting letter from the Law Department of the City of New York, dated May 15, 1936. It states that the bill was introduced at the behest of the New York City authorities: "so as to provide as a condition precedent to the maintenance of an action against the Board of Education that a notice of claim be filed with the Comptroller and the Board of Education. This provision is almost identical with Section 261

of the Greater New York Charter[3] * * * which * * * gives to the Board of Education power similar to that possessed by the Comptroller to investigate such claims. It places the Board of Education on the same footing as other departments of the City insofar as claims or lawsuits or actions are concerned.[4] It provides that a claimant shall give to the Comptroller notice of his claim * * * [I]t would give an opportunity for an investigation of the facts of a claim at a time when such facts are fresh in the minds of the claimant and witnesses. Such an investigation would be a great help in the settlement of claims that ordinarily would not be discussed for settlement until an action or proceeding had come on for trial."

Also appearing in the bill jacket is a mèmorandum, dated May 20, 1936, by the Deputy Commissioner and Counsel of the State Education Department stating that "[t]he requirements seem to me to be reasonable and *I think the same provision might well be made Statewide"* [5] (emphasis supplied).

Thus, the only reason for the enactment of section 868-b of the former Education Law was that the City of New York wanted to give its board of education (which had to be independently sued) the same rights that other city departments (which could not be independently sued) had, to wit, the opportunity to analyze a claim for a period of 30 days before suit and to require the claimant to submit to a sworn hearing.

The difference between the board of education and other divisions or departments of New York City was clearly stated by the Court of Appeals in *Matter of Divisich v Marshall* (281 NY 170, 173): "If there be one public policy well-established in this State it is that public education shall be beyond control by municipalities and politics. The Board of Education of the City of New York is not a department of the city government,

---

3. The letter should have added "and Section one hundred forty-nine".

4. The 1897 charter made no provisions whereby the other departments of the city could independently sue or be sued, whereas section 1055 of the charter stated that although school property was owned by the City of New York, such property was "under the care and control of the board of education", and that "[s]uits in relation to such property shall be brought in the name of the said board of education." The Law Department's letter showed that it was conversely recognized that suits relating to property under the "care and control of the board of education" were maintainable *against* that entity, and not against the City of New York (since there was no principal-agent relationship between them [see *People ex rel. Wells & Newton Co. of N. Y. v Craig,* 232 NY 125]).

5. This was done in 1938, by enactment of section 858-a of the former Education Law.

it is an independent corporate body and may sue and be sued in its corporate name. (Education Law [Cons. Laws, ch. 16], §§ 300, 865; *Matter of Fleischmann v. Graves,* 235 N.Y. 84.)"

### C: The inclusion of the City of Buffalo within section 868-b of the former Education Law.

By chapter 648 of the Laws of 1939, the population figure of section 868-b was reduced to 400,000, thereby including the Board of Education of the City of Buffalo. The bill jacket reveals that the bill was recommended by the Common Council, the Corporation Counsel and the Board of Education of the City of Buffalo. The supporting letter of the Mayor of that city to Governor Lehman, stated: "The municipalities in this and other states, *except Boards of Education,* have for many years had the right to examine claimants * * * Heretofore the local board [i.e., the Board of Education of the City of Buffalo] has labored in the dark concerning many essential details of claims presented against it * * * The proposed bill, if it is approved, will enable the local board to act with more precision, promptness and justice" (emphasis supplied).

The supporting memorandum of the Deputy Commissioner and Counsel of the State Education Department stated: "I can see no reason why this statute should not apply to Buffalo as well as New York City".

Thus, what were originally provisions contained in the Charter of the City of New York relating to claims against that city, per se, were transformed by a general State statute to cover the boards of education of New York and Buffalo.

### D: The 1947 revision of the Education Law.

The Joint Legislative Committee on the State Education System produced the 1947 revision of the Education Law. In its final report (NY Legis Doc, 1947, No. 63, p 19) it stated: "The Committee did not incorporate any substantive changes in its work of revision, which is purely editorial in nature. Wherever the Committee wished to recommend substantive changes, action was taken by the introduction of separate and independent bills".

The revised Education Law (L 1947, ch 820) renumbered section 868-b as section 2512 (now § 2562): that section, in relevant part, is exactly the same as the original section 868-b. That is not surprising since the committee's stated intent was

not to make any substantive changes in the Education Law as it had theretofore existed.

The plaintiff's contention here is that section 2562 of the Education Law contains the sole prerequisites to a suit on a contract action against the Board of Education of the City of New York (or of Buffalo) and that therefore the fact that it did not present the defendant with written verified claims within three months after the accrual of such claims as required by section 3813 of the Education Law, is irrelevant.

## II. EDUCATION LAW SECTION 3813 AND ITS FOREBEARS

### A: The 1938 and 1943 Statutes

Section 858-a of the former Education Law was added by chapter 208 of the Laws of 1938. It read:

"Presentation of claims against the trustees of any school district or any school district officers.

"No action or special proceeding, for any cause whatever, relating to district property or claim of the district, or involving its rights or interests shall be prosecuted or maintained against any school district or any school district officer unless it shall appear by and as an allegation in the complaint or necessary moving papers that at least thirty days have elapsed since the demand, claim or claims upon which such action or special proceeding is founded were presented to the said district or district officer for adjustment, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment. *The provisions of this section, however, shall not supersede, alter or affect the provisions of section eight hundred sixty-eight-b of this chapter*" (emphasis supplied).

In enacting that section the Legislature omitted any requirement (such as was contained in former Education Law, § 868-b, subd 2) that a *claimant testify at a sworn hearing.*

Appellant argues that it is only because section 868-b required a sworn hearing while the new statute omitted such a requirement that the Legislature added the final sentence to section 858-a, stating that its provisions "shall not supersede, alter or affect the provisions of section eight hundred sixty-eight-b of this chapter".

The bill jacket for section 858-a of the former Education Law (L 1938, ch 208) does not contain an explanation for the

addition of that sentence. It does, however, include a memorandum from the Deputy Commissioner and Counsel of the State Education Department to the Governor stating that the bill's purpose "is to place a limitation upon actions brought against school districts", and that "[r]ecently there have been a number of actions brought against school districts throughout the State for negligence. A provision of this kind is apparently desirable". The sole other document in the bill jacket is a memorandum by Nathan R. Sobel, Counsel to the Governor, stating that the bill provides that "no suit may be brought against the trustees of any school district or school officer unless allegation is made that at least thirty days have elapsed since the demand or claim was presented", and that "[a] similar provision is made in nearly every city charter and in the village law, town law, etc."[6]

Therefore, as of September 1, 1938, actions against "any school district" as well as those against the Board of Education of the City of New York (pursuant to the 1936 enactment of § 868-b) required a lapse of 30 days "since the demand or claim has been presented" before institution of suit, but in New York City the claimant, additionally, was required to testify at a sworn hearing. It was apparently to preserve this right to the Board of Education of the City of New York that the draftsmen felt it necessary to include the nonsuperseding sentence in section 858-a.

In neither of the statutes in force in September, 1938 was there then any requirement for the service of a *verified* claim or that such a claim be served *within any particular time* before the institution of a lawsuit. However, five years later, by chapter 645 of the Laws of 1943 (eff April 20, 1943), section 858-a was amended to require a verified claim and that it be presented within three months after its accrual. The following is the text of section 858-a, as amended:

"§ 858-a. Presentation of claims against the governing body of any school district.

"No action or special proceeding, for any cause whatever,

---

6. The Tenth Annual Report of the Judicial Council (1944, pp 284-296), analyzes the charters of all of the then 62 cities of New York State "with Reference to Notice of Claims"; many of them (e.g., Auburn, Canandaigua, Glens Falls, Hornell, Port Jervis) included actions in contract as well as in tort. We may well assume that there were many local variants of such provisions in the legislation of the towns and villages. However, *none of the city charter provisions related to actions against the board of education of such cities.*

relating to district property or claim against the district, or involving its rights or interests shall be prosecuted or maintained against any school district or any school district officer *unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district within three months after the accrual of such claim,* and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment. The provisions of this section, however, shall not supersede, alter or affect the provisions of section eight hundred sixty-eight-b of this chapter" (emphasis supplied).

Just as in the original 1938 version, there is no specific mention of a *board of education* as one of the school authorities whose interests were intended to be protected by the statute. Instead the title and the text stated such entity to be "the governing body of any school district".

The bill jacket (L 1943, ch 645) contains a memorandum to Governor Dewey from the Counsel to the State Education Department, dated April 12, 1943, which states: "This bill was drawn at the suggestion of the New York State School Boards Association, Inc. Its provisions are consonant with Section 244 of the Second Class Cities Law[7] * * * It is urged that the bill receive Executive approval."

---

**7.** Section 244 of the Second Class Cities Law (L 1940, ch 406) did not relate to school districts. It provided that a verified claim against a "second class city" must be served within three months after a claim of negligence arose based on the unsafe condition of a street, highway or bridge. Pursuant to the Administrative Code of the City of New York, effective January 1, 1938, it was required that an action against the city for *property damages* due to the negligence or maintenance of a nuisance by the city must be preceded by a verified "notice of intention to commence such action * * * within six months after such cause of action shall have accrued" (Administrative Code, § 394a-1.0, subd b). It further stated that an action "against the city *or against the board of education* or the board of higher education * * * or any agency of the city" for *personal injuries* due to negligence must be preceded by "a notice of intention to commence such action * * * within six months after such cause of action shall have accrued" (Administrative Code, § 394a-1.0, subd c). I believe it unnecessary to discuss the impact of these provisions since they relate only to tort actions and we are concerned here with a *contract* action. Furthermore, the prior numerous local provisions as to limitation of time to serve a claim based on the negligence of a municipality (see Tenth Annual Report of NY Judiciary Council, 1944, pp 284-296) became obsolete on September 1, 1945, the effective date of section 50-e of the General Municipal Law, relating to "any case founded upon tort", which (at that time) required service of a notice of claim within 60 days after it arose. Subdivision 4 of that statute made obsolete all the provisions of previous statutes (both general and local) insofar as they related to *torts.*

Most significant is the memorandum to the Governor from the Attorney-General. He pointed out that while the 1938 version of section 858-a was entitled "Presentation of claims *against the trustees of any school district* or any school district officers", by the proposed amendment the new title would read "Presentation of claims *against the governing body of any school district"* (emphasis supplied). He then made this pertinent explanation: "Presumably this change is desired to include within the section all bodies governing school districts *such as boards of education* and single trustees as well as boards of trustees" (emphasis supplied).

He further stated that the Counsel to the State Education Department had advised him that "the amendment was prepared by his Department at the request of local school authorities" and that he found no legal objection to the bill. It thus appears that although the State Education Department had been asked to prepare the amendment by "local school authorities", in the preparation thereof it signalled (by the change of title and text of § 858-a) that the amended statute was to apply to more than "the trustees of any school district or any school district officers". The change to "the governing body of any school district" obviously was meant to enlarge the bodies covered by the 1938 statute. In the opinion of the Attorney-General this enlargement encompassed, *inter alia,* boards of education.[8]

One can only speculate as to why the State Education Department, in drafting the bill which was to become section 858-a of the former Education Law desired to include boards of education as entities that were to receive the protection of what was, in effect, a short Statute of Limitations based on a

---

8. It should be noted that the words "board of education" appear in chapter 786 of the Laws of 1917 which added to the former Education Law article 33-A entitled "BOARD OF EDUCATION IN THE SEVERAL CITIES OF THE STATE". Section 865 thereof provided that "A board of education is hereby established in each city of the state". Section 2502 of the revised Education Law was to contain the same language in article 51 pertaining to city *school districts.* Therefore the *direct* school district entity in each city is its board of education. Elsewhere it is the "trustees or officers of school districts" (although contiguous school districts may comprise *intermediate* school districts, each of which "shall have a board of education" [Education Law, former § 1952, entitled "Intermediate board of education"]). It was the Attorney-General's opinion that boards of education of the various cities were covered by the term "governing body of any school district" and therefore that such boards (as well as officials of noncity school districts) were being given the expanded protection of requiring claimants to file a verified claim within three months after accrual.

formal verified claim. However, a reasonable conclusion is that in the course of preparing the legislation it was realized that it would be an absurdity to give such protection to noncity school authorities and withhold it from the school authorities (i.e., boards of education) of the 62 cities of the State of New York, for if such legislation was a proper protection against stale and uncertain claims that might be made in suburban and rural areas, it would be all the more necessary against claims made against school authorities of the cities, where there would generally be less of a personal awareness of what construction and supplying contractors were doing and delivering.

The retention in this 1943 statute of the "superseding" sentence, contained in the original 1938 enactment of section 858-a will be discussed hereafter.

### B: The 1947 revision of the Education Law

By the afore-mentioned revision of the Education Law in 1947 (L 1947, ch 820), section 858-a was renumbered as section 3813 and read as follows:

"§ 3813. Presentation of claims against the governing body of any school district.

"1. No action or special proceeding, for any cause whatever, *except as hereinafter provided,* relating to district property or claim against the district, or involving its rights or interests shall be prosecuted or maintained against any school district, *board of education, or any officer of a school district or board of education,* unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district *within three months* after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

"2. Notwithstanding anything to the contrary hereinbefore contained in this section, no action or special proceeding founded upon *tort* shall be prosecuted or maintained against any of the parties named in this section unless a notice of claim shall have been made and served in compliance with section fifty-e of the general municipal law, nor until the expiration of thirty days after the service of such notice.

"3. The provisions of this section shall not supersede, alter or affect the provisions of section twenty-five hundred twelve of this chapter [emphasis supplied]."

Subdivision 1 is a repetition of all but the last sentence of the 1943 version of section 858-a, except for the following: (1) the addition of "except as hereinafter provided" after "for any cause whatever", and (2) the two specific mentions of "board of education" as one of the entities covered by the requirements for the service of a verified claim within three months after accrual of the cause of action.

The clause "except as hereinafter provided" is explained by the fact that section 50-e of the General Municipal Law was enacted in 1945 (L 1945, ch 694), so that *tort* actions against municipalities and their agencies became subject to the strictures of that statute. This explanation for the "hereinafter provided" clause is made explicit by subdivision 2 of section 3813.

The recitals of "board of education" in subdivision 1 of the new statute merely made *explicit* what the drafting committee believed to be *implicit* in the 1943 version of section 858-a since the committee, as we have noted, "did not incorporate any substantive change in its work of revision".

So wary was the committee against making any substantive change that it left intact, in the first subdivision of section 3813, the "three months'" provision of section 858-a despite the fact that in subdivision 2 it required "compliance [as to tort actions] with section fifty-e of the general municipal law" which specifies 90 days as the period. The committee did not make the time periods the same (although they were so close) apparently because it believed that even such a slight change would violate its self-imposed prohibition against making substantive changes.

Since the committee was so sensitive to the making of even the slightest substantive change, it is clear that its inclusion of "board of education" in the text of the first subdivision of. the new statute constituted merely a clarification of its view that such school authority had indeed been included (although not by name) in the 1943 enactment of section 858-a, just as the Attorney-General had stated.

But even if the committee had erred, so that its inclusion of "board of education" constituted a substantive change, the statute made it crystal clear that an action "against *any* * * * board of education" (emphasis supplied) must be preceded by

service of a verified claim within three months after accrual of the cause of action sued upon.

### III. THE MEANING OF "SHALL NOT SUPERSEDE, ALTER OR AFFECT THE PROVISIONS OF SECTION TWENTY-FIVE HUNDRED TWELVE" (NOW SECTION TWENTY-FIVE HUNDRED SIXTY-TWO)

During the years 1938 to 1943 there were parallel provisions in the Education Law dealing with assertion of claims against school authorities. Section 868-b, relating to the Board of Education of New York City, preceded by two years section 858-a relating to claims against the trustees of any school district. The statute relating to the independently suable Board of Education of the City of New York (§ 868-b) was a carry-over from the New York City Charter, and therefore contained the same provision requiring a sworn hearing of a claimant that had been provided since 1897 to claims against New York City. On the other hand the 1938 statute (§ 858-a) had no such long-established background. By that statute the Legislature determined that the prerequisite that there be a lapse of 30 days between assertion of a claim and institution of a suit should apply to school districts throughout the State, but that the requirement that there be a sworn hearing should not be included. Since the statutes (§§ 858-a, 868-b) were otherwise identical, it seemed logical to provide that in New York City a person with a claim against the board of education would still have to appear for a sworn hearing. If the new statute (§ 858-a) had remained silent on that subject a contract claimant against the New York City Board of Education could claim that he need not appear for a sworn hearing because section 858-a (which pertained to "*any* school district"), being an all encompassing general statute, superseded the provisions of the 1936 statute (§ 868-b) which applied only to the Board of Education of the City of New York. Thus, it may be inferred that in enacting section 858-a in 1938 the Legislature chose to negate any such argument by stating: "The provisions of this section, however, shall not supersede, alter or affect the provisions of section eight hundred sixty-eight-b of this chapter".

In doing this the Legislature no doubt intended that contract claimants against the Board of Education of the City of New York were to be faced with *greater* burdens as to their lawsuits than contract claimants against school authorities throughout the rest of the State. The respondent's contention

to the contrary is ironic for its interpretation of the nonsuperseding clause is that in New York City (and since 1939 in Buffalo) a contract claimant against the board of education is subject to far *less* barriers to suit than contract claimants against school authorities throughout the rest of the State.

When section 858-a was amended in 1943 it contained the essence of the present section 3813 in that it too required a verified claim to be served within three months after accrual of the cause of action; however, *it still did not require the claimant to testify at a sworn hearing.* That being the case, the legislators again repeated the final, nonsuperseding sentence contained in the original 1938 version of the statute. Had they not done so, as we have pointed out, a claimant against the Board of Education of either New York City or Buffalo could assert the right not to appear at a sworn hearing, as required by section 3813.

The construction asserted by the plaintiff attributes a patently absurd intent to the Legislature, to wit, that only in the two largest municipalities of the State could contract claimants against a school authority wait six years before asserting their claims (see *Kramer v Board of Educ.,* 194 Misc 128, affd 275 App Div 915), and that even then, only in those two cities, could the claim be asserted in a most informal manner, not even including a writing (see *Monks v Manch,* 33 AD2d 989). Since the construction contended for by plaintiff is contrary to the legislative history of the two statutes and because such a construction would lead to an absurd result, it may not be accepted (see McKinney's Cons Laws of NY, Book 1, Statutes, § 145; see, also, *Bennett v County of Nassau,* 65 AD2d —).[9]

---

**9.** The 1947 revision of the Education Law included article 51 entitled "CITY SCHOOL DISTRICTS". In 1950 the provisions as to city school districts were divided into two articles based on the populations of the cities (L 1950, ch 762). Article 51 was newly entitled "CITY SCHOOL DISTRICTS OF CITIES WITH LESS THAN ONE HUNDRED TWENTY-FIVE THOUSAND INHABITANTS". A new article, 52, was entitled "CITY SCHOOL DISTRICTS OF CITIES WITH ONE HUNDRED TWENTY-FIVE THOUSAND INHABITANTS OR MORE". Section 2552 (of article 52) listed the inclusive cities as New York, Buffalo, Rochester, Syracuse, Yonkers and Albany. Since New York and Buffalo were among these, section 2512 was removed from article 51, placed in article 52, and renumbered as section 2562. Short of creating a separate article in the Education Law relating to New York and Buffalo only, the provisions of section 2562 had to be placed in the article dealing with boards of education in cities with a population of more than 125,000.

It should be noted that section 3813 (which requires service of a verified claim within three months) was and still is contained in article 77, entitled "FINES, PENALTIES, FORFEITURES AND COSTS". The 16 sections of this article have no separate

The judgment appealed from should therefore be reversed and the complaint dismissed.

HOPKINS, J. P., DAMIANI and RABIN, JJ., concur.

Judgment of the Supreme Court, Queens County, entered November 2, 1977, reversed, on the law, with costs, and complaint dismissed.

provision based on school districts of cities (of any particular population) or of other areas of the State. Provisions as to a "board of education" are contained in section 3816 of that article (relating to "The duty of the trustees or board of education of any school district [to carry out] an order of the county judge") as well as section 3813, the subject matter of this appeal.

Therefore there is no merit to plaintiff's claim that the placing of sections 2562 and 3813 in separate articles of the Education Law constitutes proof that the requirement of a verified notice of claim within three months contained in section 3813 was not intended to apply to New York City and Buffalo.