**ONE HUNDRED PEARL LTD., Plaintiff,**

v.

**VANTAGE SECURITIES, INC. (doing business as Reich & Co.) and, Vantage International Corp., Defendants,**

and

**Paul H. Fitzgerald, Intervenor–Defendant.**

No. 93 Civ. 7214 (PKL).

United States District Court, S.D. New York.

May 31, 1995.

Michael M. Gordon, Collier Jacob & Mills, Somerset, NJ.

Vincent A. Sama, Baker & McKenzie, New York City, for plaintiff.

Robert H. Pees, Steven M. Pesner, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York City, for defendants.

Edward J.M. Little, Lisa A. Cahill, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, New York City.

### *MEMORANDUM ORDER*

LEISURE, District Judge:

This is a diversity action for breach of contract. Plaintiff is One Hundred Pearl Ltd. ("One Hundred Pearl"), a British Virgin Islands corporation, with its principal place of business in the British Virgin Islands. Defendants are Vantage Securities, Inc. (doing business as Reich & Co.) ("Vantage Securities") and its parent company, Vantage International Corp. ("Vantage International") (collectively "Vantage"). Vantage International is a New Jersey corporation, with its principal place of business in Iselin, New Jersey. Vantage Securities is an Alabama corporation, with its principal place of business in New York, New York. Intervenor-defendant is Paul H. Fitzgerald ("Fitzgerald"). One Hundred Pearl alleges that it is the assignee of certain payments (the "Earnout") owed from Vantage Securities to 500 Hanover Corp. ("500 Hanover") pursuant to a contract between 500 Hanover and Vantage (the "Transaction Agreement"). One Hun-

dred Pearl further alleges that Vantage Securities breached the Transaction Agreement by failing to remit the Earnout to One Hundred Pearl. The amount in controversy exceeds $50,000 exclusive of interest and costs. This Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

Fitzgerald has moved for summary judgment on his first counterclaim against One Hundred Pearl. This counterclaim alleges that, as to Fitzgerald, 500 Hanover's assignment of the Earnout to One Hundred Pearl was a fraudulent conveyance within the meaning of New York Debtor and Creditor Law ("DCL") § 273–a (McKinney's 1990). The counterclaim seeks the Court to set aside the conveyance of the Earnout, pursuant to DCL § 278(1)(a), to the extent necessary to satisfy a judgment in favor of Fitzgerald against 500 Hanover, plus post-judgment interest having accrued thereon since the date of entry. For the reasons stated below, Fitzgerald's motion is granted.

## BACKGROUND

On August 25, 1992, Fitzgerald commenced an arbitration proceeding before the New York Stock Exchange against 500 Hanover Corp. (then known as Reich & Co., Inc.), seeking in excess of $630,000 on the ground that 500 Hanover had breached a liquidated damages clause in Fitzgerald's employment contract.

On November 30, 1992, 500 Hanover sold certain of its assets to Vantage, in return for the Earnout, consisting of the right to receive a percentage of Vantage's future revenues, as elaborated in the Transaction Agreement. On March 1, 1993, 500 Hanover assigned the Earnout to One Hundred Pearl, in return for One Hundred Pearl's promise to manage 500 Hanover's assets and liabilities, as elaborated in a Management Services Agreement, see Affidavit of Paul H. Fitzgerald, Exhibit C ("Management Services Agreement").

On May 3, 1993, the arbitration panel awarded Fitzgerald $586,307.69, plus $73,-847.32 in attorney's fees. The arbitration panel dismissed all counterclaims and assessed $10,000 in forum fees against 500 Hanover.

On November 1, 1993, New York State Supreme Court granted Fitzgerald's petition to confirm the arbitration award and, on January 4, 1994, entered judgment in his favor in the amount of $701,457.27.

## DISCUSSION

■ "Summary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). In deciding the motion, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Balderman v. U.S. Veterans Administration,* 870 F.2d 57, 60 (2d Cir.1989). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992); *accord Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991).

■ The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying the materials in the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a motion for summary judgment is properly made and supported, however, the burden shifts to the nonmoving party to " 'set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

DCL § 273–a provides:

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if,

after final judgment for the plaintiff, the defendant fails to satisfy the judgment. N.Y. DCL § 273–a (McKinney's 1990). There is no dispute that One Hundred Pearl has failed to satisfy Fitzgerald's final judgment against it. One Hundred Pearl argues, however, that summary judgment against it is improper, first, because, as a respondent in an arbitration at the time it assigned the Earnout, 500 Hanover was not "a defendant in an action for money damages" within the meaning of § 273–a; and, second, because there is a genuine issue of material fact as to whether its promise to manage 500 Hanover's assets and liabilities constituted "fair consideration" for the Earnout. The Court takes these matters up in turn.

## A. "A Defendant in an Action for Money Damages."

■ One Hundred Pearl argues that DCL § 273–a is not applicable here because, although 500 Hanover was a respondent in arbitration brought by Fitzgerald seeking in excess of $630,000, 500 Hanover was not "a defendant in an action. for money damages" within the meaning of DCL § 273–a. The question raised by One Hundred Pearl's argument—whether an arbitration is "an action" within the meaning of DCL § 273–a—is apparently one of first impression, neither party having cited any authority directly on point, and the Court's independent research having revealed none. For the reasons stated below, the Court concludes that an arbitration is "an action" within the meaning of DCL § 273–a.

The Court's analysis is guided by the opinion of the Court of Appeals of New York in *Board of Education v. Wager Constr. Corp.*, 37 N.Y.2d 283, 333 N.E.2d 353, 372 N.Y.S.2d 45 (1975). There, two boards of education (the "boards") had sought to stay arbitrations instituted against them by building contractors (the "contractors"). The boards relied on New York's Education Law ("EL") § 3813, which, as described by the Court of Appeals, "require[d] that a verified written claim must have been presented to the board 'within three months after the accrual of such claim', before bringing any '*action or special proceeding*' against the board." *Wager*, 37 N.Y.2d at 287, 333 N.E.2d at 354–55, 372

N.Y.S.2d at 47 (emphasis added). The boards sought to stay the arbitrations on the ground that an arbitration *was* an "action or special proceeding" within the meaning of EL § 3813 and that the contractors had not satisfied § 3813's notice-of-claim requirement.

The Court of Appeals agreed with the boards, holding that "[t]he arbitrations should ... be stayed." *Wager*, 37 N.Y.2d at 287, 333 N.E.2d at 355, 372 N.Y.S.2d at 48. The Court reasoned that the conclusion that an arbitration was an "action or special proceeding" within the meaning of EL § 3813 was indicated by the "*purpose*" of that section—"to give a school district prompt notice of claims so that investigation may be made before it is too late for investigation to be efficient." *Wager*, 37 N.Y.2d at 289, 333 N.E.2d at 356, 372 N.Y.S.2d at 49 (emphasis added) (citations and internal quotation marks omitted). The Court explained: "Applied to arbitrations, this purpose is equally well-served as it is when applied to actions and special proceedings." *Id.* The Court was unmoved, in particular, by the point that "the statute by its terms applies [only] to an 'action or special proceeding', and under [New York's Civil Practice Law & Rules], an arbitration is no longer classified as a 'special proceeding' as it was under the former Civil Practice Act." *Id.* (citations omitted).

The lesson that this Court draws from *Wager* is that, where a body of New York substantive law does not define the terms, "action or special proceeding," an arbitration should be deemed an "action or special proceeding" when doing so will equally well-serve the purpose of the substantive provision at issue, notwithstanding that an arbitration is not an "action or special proceeding" under the CPLR. Applying this principle to ·he matter at hand, the Court finds that the purpose of § 273–a is to prevent debtors who are defendants in actions for money damages from placing their assets outside the reach of the plaintiffs in those actions and that this purpose is equally well-served by applying § 273–a to debtors who are respondents in arbitrations. One Hundred Pearl points to no functional difference between an arbitration and a judicial action

that would support applying § 273–a in the context of the latter but not the former, and the Court has not independently identified such a difference. As the Court of Appeals stated in *Wager*, "judicial proceedings and arbitrations for enforcing claims ... may be inextricable, as a practical matter. If, for example, a [respondent] refused to submit to arbitration, a special proceeding would be available to compel arbitration; and of course to enforce an award in arbitration." *Wager*, 37 N.Y.2d at 289, 333 N.E.2d at 356, 372 N.Y.S.2d at 49–50.

The Court thus concludes that, as a respondent in an arbitration where the petitioner sought a monetary award, 500 Hanover was "a defendant in an action for money damages" within the meaning of DCL § 273–a.[1]

## B. "A Conveyance Without Fair Consideration."

 One Hundred Pearl further argues that summary judgment against it is improper, in any event, because what constitutes "fair consideration" is "a question of fact that must be determined under the circumstances of each particular case." Plaintiff's Memorandum of Law in Opposition to Fitzgerald's Motion for Partial Summary Judgment ("Plaintiff's Mem.") at 5 (citations omitted). This observation is true but beside the point. There is no dispute in this particular case that the nature of the consideration that One Hundred Pearl gave 500 Hanover in return for the Earnout was a promise of future

management services, and it is well-settled that, as a matter of law, "promises to provide future services are insufficient to serve as adequate consideration under New York's Debtor and Creditor Law." *United States v. Red Stripe, Inc.*, 792 F.Supp. 1338 (E.D.N.Y. 1992) (discussing DCL § 272, which defines "fair consideration" for purposes of the DCL); *Orbach v. Pappa*, 482 F.Supp. 117, 120 (S.D.N.Y.1979); *Kleinfeld v. Pedersen*, 116 A.D.2d 970, 498 N.Y.S.2d 596, 597 (4th Dept.1986); *Schmitt v. Morgan*, 98 A.D.2d 934, 471 N.Y.S.2d 365, 367 (3d Dept.1983), *appeal dismissed*, 62 N.Y.2d 914, 479 N.Y.S.2d 9, 467 N.E.2d 893 (1984).

One Hundred Pearl also argues that there is a genuine issue of material fact as to whether its promise of future services constituted "fair consideration" for the Earnout, because the Earnout is "essentially ... a breach of contract claim ... the value of which has yet to be determined." Plaintiff's Mem. at 6. This argument is without merit. By its terms, DCL § 273–a reaches "[e]very conveyance...." There is no dispute that 500 Hanover assigned its contractual right to the Earnout to One Hundred Pearl, and there can be no dispute that such an assignment of the right to receive a payment stream is a "conveyance" within the meaning of DCL § 273–a, *see* DCL § 270 ("In this article ... 'Conveyance' includes *every* ... assignment....") (emphasis added).[2]

The Court therefore concludes that 500 Hanover's assignment of the Earnout to One

---

1. The conclusion that an arbitration is an "action" within the meaning of § 273–a is also consistent with the DCL's general, remedial purpose and the policy favoring arbitration over judicial litigation as a means of dispute resolution.

2. One Hundred Pearl also relies on *United States v. Red Stripe, Inc.*, 792 F.Supp. 1338 (E.D.N.Y. 1992), where the Court stated: "Claims that are 'inchoate, uncertain, and contested' have no present value and cannot be considered an asset of the company." *Id.* at 1343 (citations omitted). However, the *Red Stripe* Court was there discussing whether a breach of contract claim was an asset of the company for purposes of determining whether the company was insolvent, not whether an assignment of a contractual right to receive a payment stream is a conveyance for purposes of DCL §§ 270 and 273–a. The language of *Red Stripe* that One Hundred Pearl relies on is thus inapposite. In any event, One Hundred Pearl's

suggestion that the Earnout has no present value is belied by, *inter alia*, its opposition to Fitzgerald's motion, as well as its prosecution of its own claim against Vantage for the Earnout, at admittedly substantial cost to itself, *see* Affidavit of Joseph Gentile in Opposition to Fitzgerald's Motion for Partial Summary Judgment, at ¶¶ 7–8. ("7.... Any future value realized by One Hundred Pearl through the resolution of this lawsuit is offset by the time and effort expended by One Hundred Pearl in providing services rendered under the Management Services Agreement and the expenses it has incurred, and continues to incur, including the cost of litigating this action. 8. The assignment of payments to be made under the Earnout provisions of the Agreement have amounted to nothing more than a claim for breach of contract and have resulted in nothing but litigation costs to One Hundred Pearl....").

Hundred Pearl in return for One Hundred Pearl's promise to manage 500 Hanover's assets and liabilities was a "conveyance without fair consideration," within the meaning of DCL § 273–a.

## CONCLUSION

Fitzgerald's motion for summary judgment on his first counterclaim against One Hundred Pearl is HEREBY GRANTED. Pursuant to DCL § 278(1)(a), the Court HEREBY SETS ASIDE the conveyance of the Earnout from 500 Hanover to One Hundred Pearl, to the extent necessary to satisfy Fitzgerald's judgment against 500 Hanover, plus post-judgment interest having accrued thereon since the date of entry.[3]

**SO ORDERED.**

---

**3.** One Hundred Pearl has not argued that the Earnout should not be set aside to the extent necessary to satisfy Fitzgerald's claim for post-judgment interest, in the event that the Earnout should be aside to the extent necessary to satisfy the judgment itself.